# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TRACEY MCCARTHY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:13-CV-692 CAS |
| | ) |
| WEBSTER UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This removed matter is before the Court on plaintiff Tracey McCarthy's motion to remand this action to the Circuit Court for the City of St. Louis, Missouri. For the following reasons, the Court concludes that plaintiff's motion to remand should be granted.

**Background**

Plaintiff filed this action in the Circuit Court for St. Louis City against defendant Webster University in six counts: assault (Count I); false imprisonment (Count II); retaliation in violation of Missouri Revised Statute § 213.010, *et seq.* (Count III); conspiracy in violation of Missouri Revised Statute § 231.010, *et seq.* (Count IV); intentional infliction of emotional distress (Count V); and negligent infliction of emotional distress (Count VI). Plaintiff alleges that defendant had its agent, Professor Karen Tokarz, misrepresent herself as a mediator during the court-ordered mediation in plaintiff's underlying federal case, McCarthy v. Webster Univ., 4:11-CV-1614 CAS ("McCarthy I").[1] Plaintiff alleges that during the mediation, defendant's agent Professor Tokarz engaged in repeated threatening conduct, physically restrained plaintiff, screamed threats at plaintiff, and

---

[1]Professor Karen Tokarz is the Charles Nagel Professor of Public Interest Law & Public Service and Director, Negotiation & Dispute Resolution Program at Washington University in St. Louis.

subjected plaintiff to "repeated coercion, extortion, assault, false imprisonment, and emotional distress."  (Compl. at ¶ 57).

Backing up a bit:  in McCarthy I, plaintiff, who is a tenured associate professor of legal studies, sued her employer Webster University alleging it discriminated against her on the basis of her race, gender, and disability in violation of the Missouri Human Rights Act, Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act.  She also alleged sexual harassment and retaliation.  See McCarthy I, Doc. 4.  Pursuant to Local Rule 6.01, the Court ordered the parties in McCarthy I to mediate before June 4, 2012.  Plaintiff filed a Designation of Neutral form, identifying Professor Tokarz as the parties' choice for a mediator, and the Court entered an Order appointing Tokarz as mediator.  Id. at Docs 29 and 30.  The parties began mediation with Tokarz on June 1, 2012, but that mediation was never completed because plaintiff left the mediation during the early afternoon because she was ill.  See Ltr. to Court (Doc. 1-4); McCarthy I, Doc. 42 (ADR Compliance Report).

Later in June 2012, plaintiff, a licensed attorney, fired the lawyer who had represented her in McCarthy I and proceeded pro se in the case until mid-December 2012.  During the period in which she represented herself, plaintiff repeatedly and willfully disregarded the Court's orders, giving rise to the Court's Order on January 10, 2013 dismissing McCarthy I with prejudice.  See McCarthy I, Doc. 133.  On the same day, plaintiff filed this instant action against defendant Webster University in the Circuit Court for the City of St. Louis, alleging the six aforementioned tort claims based on the conduct of Professor Tokarz during the parties' court-ordered mediation.  Defendant removed the case to this Court on April 12, 2013, and plaintiff has moved to remand.

**Discussion**

The party invoking jurisdiction bears the burden of proof that all prerequisites to jurisdiction are satisfied. Hatridge v. Aetna Cas. & Sur. Co., 415 F.2d 809, 814 (8th Cir. 1969). Removal statutes are strictly construed, and any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand. Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, 119 F.3d 619, 625 (8th Cir. 1997), cert. denied, 522 U.S. 1075 (1998). In determining whether a claim "arises under" federal law, courts must be "mindful that the nature of federal removal jurisdiction—restricting as it does the power of the states to resolve controversies in their own courts—requires strict construction of the legislation permitting removal." Nichols v. Harbor Venture, Inc., 284 F.3d 857, 861 (8th Cir. 2002) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941)).

      A.      Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1)

Defendant removed this case pursuant to 28 U.S.C. 1442(a)(1), the federal officer removal statute. The federal officer removal statute is designed to protect officers of the federal government who, when acting pursuant to authority granted to them under federal law, run afoul of the laws of a State. See Dunevant v. Healthcare USA of Mo., LLC, 2008 WL 4066384 (E.D. Mo. Aug. 27, 2008). Section 1442(a)(1) states in pertinent part:

    (a)    A civil action . . . that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States . . . :

          (1)    The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

Defendant states that because plaintiff alleged claims against it based on the alleged actions of Professor Tokarz "in her capacity as a federal court-appointed mediator," defendant properly removes the state court action pursuant to § 1442(a)(1). Defendant emphasizes that the statute authorizes removal of an action with claims that are merely "directed to" a federal officer—not just those filed "against" federal officers. Moreover the section "does not require that the person or entity invoking the federal officer removal jurisdiction statute actually be a federal officer." (Notice of Removal at ¶¶ 19-20).

As this Court has found, for a private entity to invoke removal jurisdiction under § 1442(a)(1), the removing party (1) must be a person; (2) must be acting under a federal officer or agency; (3) must be sued for actions under color of such office; and (4) must have a colorable federal defense. Dunevant, 2008 WL at 4066384, *2 (citing Regional Med. Trans., Inc. v. Highmark, Inc., 541 F. Supp. 2d 718, 732 (E.D. Pa. 2008)). Although the statute is to be liberally construed, private actors, such as defendant, seeking to benefit from its provisions "bear a special burden of establishing the official nature of their activities." Id.

Here, assuming defendant is a "person" under the statute (see id. at *2 (corporations are "persons" under § 1442(a)(1))), the Court cannot find that defendant was acting under a federal officer or agency. In fact, plaintiff alleges exactly the opposite. Plaintiff alleges that Professor Tokarz participated in the June 1, 2012 meeting, not in the capacity as an officer or agent of the Court, but merely by "holding herself out as an attorney and mediator." Compl. ¶¶ 7, 15. Plaintiff alleges "Tokarz was paid by Webster University to represent Webster University's interests and positions in a June 1, 2012 meeting between Webster University and Dr. Tracey McCarthy," that

she participated "*as an agent* of Webster University," and that "Tokarz possessed *agent authority* with respect to Webster University." Compl. ¶¶ 9, 16-17 (emphasis added). Plaintiff incorporated all of these allegations regarding Tokarz as an "agent" of defendant into each of the claims set out in the McCarthy II complaint. In fact, to the extent plaintiff acknowledges that Tokarz represented herself as a court-appointed mediator, plaintiff alleges "Tokarz *mis*represented her meeting role to Dr. Tracey McCarthy as one of a third party neutral." Id. at ¶ 18 (emphasis added).

Section 1442(a)(1) authorizes removal by private parties only if they were acting under a federal officer and are being sued for actions taken under color of such office. Dunevant, 2008 WL 4066384, * 2. Here, defendant attempts to argue that it properly removed this action under § 1442(a)(1) because plaintiff's complaint is directed to a federal officer (i.e., a court-appointed mediator), and plaintiff seeks to hold defendant liable for the actions of this federal officer. But, plaintiff has not alleged that defendant Webster University (much less Professor Tokarz) was "acting under" the auspices of any federal officer or agency. To the contrary, plaintiff alleges Tokarz was an agent of defendant Webster University, not an agent of this United States District Court.

Furthermore, although a private actor can avail itself of the federal officer removal statute, defendant Webster University is not such a private actor. As the statute states: a state court action "that is . . . directed to [an officer of the United States] may be removed *by them* to the district court of the United States." 28 U.S.C. § 1442(a)(1) (emphasis added). The federal removal statute "clearly contemplates that a private actor can claim its protection when it is threatened with liability for actions taken on behalf of a federal officer." Virden v. Altria Group, Inc., 304 F. Supp. 2d 832, 845 (N.D. W. Va. 2004). The paradigm case in which a private actor has succeeded in removing cases under the statute have involved government contractors with limited discretion. Id.; see, e.g.,

Jacks v. Meridian Res. Co., LLC, 701 F.3d 1224, 1231 (8th Cir. 2012).  Although Professor Tokarz might be able to argue she was acting under a federal officer, Webster University, a party to the underlying federal mediation, cannot.

Webster confounds the federal officer removal issue by stating that "plaintiff does not dispute that Professor Karen Tokarz is a federal officer, and plaintiff's complaint specifically alleges that defendant is liable for actions taken by Professor Tokarz as defendant's 'agent.'" (Opp'n at 7).  But, if Tokarz is a federal officer acting under color of such office, then she is not an agent of Webster University.[2]  And if Professor Tokarz is an agent of Webster University, as plaintiff alleges, then she is not a federal officer.  Webster cannot have it both ways.  It cannot argue that Professor Tokarz is a federal officer, being sued for actions under color of such office, and that she is also Webster University's agent such that Webster can avail itself of the federal officer removal statute.  While plaintiff's allegation of an agency relationship between Professor Tokarz and defendant Webster University might result in her eventual undoing, it keeps her complaint outside the scope of the federal officer removal statute.[3]

      B.      Substantial Question of Federal Law

Alternatively, defendant Webster argues that this Court possesses original jurisdiction over the state court action because the complaint raises a substantial and disputed federal question.  Defendant argues that the factual allegations in plaintiff's complaint are "premised on and precluded

---

[2]Defendant Webster University is not, for example, a government contractor in the business of contracting out mediators.

[3]See Def. Mot. to Dismiss, Part IV.A. (arguing "plaintiff's failure and inability to allege plausibly that Tokarz acted as defendant's agent in the parties' court-ordered mediation requires dismissal").

by this Court's local rules governing its Alternative Dispute Resolution ("ADR") process." (Opp'n at 3). Defendant states that the meaning of this Court's ADR rules is an important federal-law issue that belongs in federal court. (Id.). Webster characterizes plaintiff's complaint as an attack on the integrity of this Court's ADR process, which seeks to use state-law claims "as a vehicle for allowing a state court to regulate this Court's ADR process." (Id.). For the following reasons, the Court disagrees, and does not find a substantial federal question sufficient to support its jurisdiction.

The variety of federal jurisdiction Webster argues for is know as "arising under" jurisdiction, under which "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues[.]" Id. There is no "single, precise, all-embracing test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties." Id. at 314 (internal marks omitted). To determine if a case falls "within th[is] special and small category," Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006), "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314 (for a lengthy discussion of Grable, see Wandel v. American Airlines, Inc., No. 4:05-MD-1702 JCH, 2005 WL 2406017, at **5-6 (E.D. Mo. Sept. 28, 2005) (state-law negligence claim arising from air crash removed to federal court; remanded)).

This case is distinguishable from the Supreme Court's <u>Grable</u> case, which is the primary authority defendant cites to support removal. 545 U.S. 308. <u>Grable</u> was a quiet title action in which Grable sued Darue to recover real property that the Internal Revenue Service seized to satisfy Grable's federal tax deficiency and then sold to Darue. Grable's quiet title suit specifically asserted that the IRS's seizure of the property was invalid because the IRS failed to satisfy the notice requirements of a federal statute. <u>Grable</u>, 545 U.S. at 310-11. The Supreme Court held that <u>Grable</u> was properly removed from state court based on federal question jurisdiction even though the petition only asserted a state law claim. This was because whether Grable was given notice within the meaning of the federal statute was an essential element of its quiet title claim, the meaning of the federal statute was actually in dispute, and that dispute was "the only legal or factual issue contested in the case." <u>Id.</u> at 315. The Court stated that the meaning of a federal tax law "is an important issue of federal law that sensibly belongs in a federal court," and noted the federal government's "strong interest in the prompt and certain collection of delinquent taxes." <u>Id.</u>

Here, by contrast, plaintiff alleges that defendant Webster's actions violated state tort law and the Missouri Human Rights Act. None of plaintiff's state law claims are based on violations of the Court's local rules   Plaintiff can establish the prima facie elements of each of her state law claims without reference to any alleged violations of the Court's local rules. To the extent defendant contends plaintiff's claims are "premised on and precluded by this Court's local rules governing its Alternative Dispute Resolution process," this merely raises an evidentiary issue for the state court. Local Rule 6.04 states that "[a]ll written and oral communications made or disclosed to the neutral are confidential and may not be disclosed by the neutral, any party, or other participant, unless the parties otherwise agree in writing." As for Professor Tokarz's potential testimony, the Rule states:

- 8 -

"The neutral shall not testify regarding matters disclosed during ADR proceedings." As with any other testimonial privilege, the state court is well-versed in handling the issue. The Court finds that federal law is not implicated in plaintiff's state common law and state statutory claims. To the extent this Court's local rules are implicated, the issues implicated are of an evidentiary nature. The state court has the capacity to interpret the local rules and resolve these evidentiary issues.

Finally, central to Grable's holding is that the federal question at issue was "substantial" and a "nearly 'pure issue of law,'" and its resolution was "both dispositive of the case and would be controlling in numerous other cases." Empire, 547 U.S. at 700 (quoting Grable, 545 U.S. at 313). Without rehashing the anomalies of this case, it is unlikely that the resolution of the evidentiary issues in McCarthy II will be controlling in numerous other cases. Defendant Webster has not cited any other case in which a mediator's testimonial privilege was implicated in a separate state court proceeding. The Court would be surprised if there were any other case of a federal plaintiff filing a state court assault, false imprisonment, intentional infliction of emotional distress, and retaliation case against a federal defendant arising out of the alleged tortious conduct of the court-appointed mediator during mediation. Add to that unlikely factual scenario: the plaintiff's suit is not based on conduct the mediator took in her official capacity, but rather in her capacity as an alleged agent of the federal defendant. The Court finds that plaintiff's claims present the type of intentional torts traditionally heard in state courts, and to entertain this action in a federal forum based on the testimonial privilege of the third-party mediator would disturb the "balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314.

**Conclusion**

The Court has expended considerable resources addressing the myriad of issues in McCarthy

I and McCarthy II. Although plaintiff's claims might be dubious and this Court could likely make quick work of defendant Webster's pending motion to dismiss, this Court simply does not have jurisdiction. To assert jurisdiction over McCarthy II would create an issue on appeal and further lengthen this already protracted litigation. For the reasons discussed herein, the Court will grant plaintiff's motion for remand.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Tracey McCarthy's motion to remand the cause to the Circuit Court of the City of St. Louis is **GRANTED**. [Doc. 10]

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the Circuit Court of the City of St. Louis, State of Missouri under 28 U.S.C. § 1447(c).

**IT IS FURTHER ORDERED** that defendant Webster University's motion to dismiss shall remain pending for resolution by the state court following remand.

An appropriate order of remand will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 22nd day of August, 2013.